CLINTSMAN *v.* ALFRED J. BROWN SEED CO

CONTRACTS—BROKERS—VERBAL GUARANTY—QUESTION FOR JURY.
   Whether a commission merchant verbally guaranteed a min-
      imum price for a quantity of fruit consigned to him, or
      merely expressed an opinion as to the amount it would bring,
      *held*, on conflicting evidence, to be a question for the jury.

Error to Kent; Adsit, J.    Submitted February 12,
1901.    Decided July 2, 1901.

*Assumpsit* by Lewis E. Clintsman against the Alfred
J. Brown Seed Company to recover a balance due on a

1901 ] CLINTSMAN v. ALFRED J. BROWN SEED CO. 281

consignment of produce. From a judgment for plaintiff, defendant brings error. Affirmed.

*Wylie & Clapperton,* for appellant.

*M. L. Dunham,* for appellee.

MOORE, J. This case was commenced in justice's court, where plaintiff obtained a judgment. Defendant appealed the case to the circuit court, where it was tried by a jury, who rendered a verdict in favor of the plaintiff. The case is brought here by writ of error.

It was the claim of plaintiff that he sold to defendant five car loads of potatoes at 25 cents a bushel, and consigned over 1,800 baskets of grapes, a quantity of pears, and 4 bushels of apples, under a guaranty of price; and that, after crediting defendant with payments amounting to $950, there was due him $177.48. It was the claim of defendant that it did not buy any of this produce, but handled it as a broker, for a commission; and that, to enable plaintiff to make purchases, it made advances to him, as is usual for brokers; and that, after accounting to the plaintiff fully for all sales, there is due defendant $291.94. The testimony was as conflicting as it well could be. The assignments of error all relate to the refusal of the court to give defendant's requests to charge or to the charge of the court as given.

While the court did not read to the jury the first and second of defendant's requests, the judge covered them fully and completely in his general charge, omitting nothing that was essential.

The important question in the case is whether defendant was entitled to have its third request given. It reads as follows:

"According to the testimony, there was no direct sale of the fruit in controversy, consisting of the grapes, pears, and apples, which were shipped to the defendant on consignment. Plaintiff claims that, in the telephone talk about the grapes, Mr. Brown assured him that they could make him some money if he consigned them, and would guarantee that they would make him a profit; all of which

is denied by Mr. Brown. There being no sale, and defendant never having seen the fruit, these statements, if actually made, would be regarded only as an expression of confidence, and would not constitute a legal contract of guaranty upon which the plaintiff could recover, and he would be entitled only to the proceeds of sale, less commissions."

The substance of the oral testimony in relation to the fruit was as follows:

"*Q.* What was your agreement with them as to grapes and pears? How did you come to sell them grapes and pears?

"*A.* Why, I had them sold to other parties, and, during the process of the sale to the other parties, I was working for Mr. Brown, and I had some talk with him about those grapes; and he said, ' If those parties don't take them, let me know, and perhaps I can make you some money on them.' The parties that I had them sold to didn't take them, and another party represented in our town—in Casnovia—offered me eight cents a basket for the grapes. I stepped to the telephone, and telephoned to Mr. Alfred Brown; told him what I had been offered, and what he thought I had better do; and he says, ' While you have got a fair offer, I can make you some money on those grapes if you will consign them to us.' And I consigned them to him.

"*Q.* How many baskets of grapes were there?

"*A.* 1,846 baskets; and there were 17 barrels of pears in the same car. They said they could use the pears just as well as anybody else, and I told them what I had been offered for them, and he said, ' Let them go in, and we will guarantee to make you some money on that car load of fruit.' And about that time I shipped them 44 bushels of pears in bushel baskets. There was no agreement as to the price of these pears in bushel baskets. I telephoned Mr. Brown, and told him what I could buy those pears for, and he says, ' If the pears are all right, buy them; there is money in them.' And I bought them, and sorted them carefully, and shipped them to him. There were 25 bushels of No. 1's and 19 bushels of No. 2's. The No. 1's cost me 75 cents a bushel, and they were worth at that time, or soon after, a dollar and a dollar and a quarter. The No. 2's were worth 30 cents a bushel. And there were 4 bushels of choice apples that were worth 50 cents a bushel."

Upon cross-examination the same witness, the plaintiff, testified as follows:

"*Q.* State the conversation you had with Mr. Brown. When did it occur ?

"*A.* It occurred about the 1st day of November last year. I had this car load of fruit loaded for St. Louis parties, and sold, as I supposed, and some of their money placed on the car. I had a talk with Mr. Alfred Brown about this same sale, and he ·said it was a good one. It was for nine cents a basket. I could not state, from recollection, the exact date of this talk. The car was billed out the 3d or 4th of November to Mr. Brown. I stated the facts in regard to the sale to the St. Louis parties to Mr. Brown. During the process of the loading of the car of fruit, the man backed out, and I telephoned Mr. Brown the facts in regard to the other man's backing out, and I said, 'I have an offer from the S. T. Fish & Co., and the representative of that firm offered me eight cents a basket for the grapes there, and $3.00 a barrel for the pears for No. 1's and $2.00 for 2's;' and I telephoned to Mr. Brown, and asked him what he thought I had better do with them; if he could make me any money out of them above that price. 'Why,' he says, 'I have got some parties in St. Louis that are hustlers;' and he says, 'They can make you some money out of your grapes, and, if you will consign them to us, I will guarantee they will make you some money above that price.' 'Well,', I said, 'Mr. Brown, I need the money for this car load of fruit. I have just paid over a hundred dollars for the fruit that is in this car, of my own money, and I need it;' and I said, 'If I sell them here, I can get my pay for them in full, and, if I consign them to you, I will have to lay out of the use of my money, unless you will advance me some on this car of fruit.' He wanted to know how much I wanted. I said I wanted at least a hundred dollars on the car; that would cover what I paid out on the car. I said, 'If I can draw out of the car load of fruit the amount I have paid out, I can get along.' 'Well,' he says, 'I will advance you a hundred dollars on this car of fruit,' and did so.

"*Q.* Then you did not have any agreement to sell those grapes and pears to Mr. Brown for any stated price?

"*A.* Nothing more than he guaranteed to make me some money above eight cents, for which I could sell them to S. T. Fish."

Alfred J. Brown, president of the defendant corporation, testified in reference to the car load of fruit as follows:

"I told plaintiff the only thing we could do with the fruit would be to ship it for his account, but it was very awkward, on account of it only being a part of a car; that we would refill the car here,—put in some grapes that we had, and also some apples, enough to make up the minimum of 24,000 pounds, in order to get the freight rates. We consigned our grapes and fruit the same as we consigned his, and took what we could get for it, as the account of sales will show. I never told him what he could get out of these grapes, or what I could get out of them, or guaranteed any price. There was no guaranty. Simply took these grapes and shipped them for him."

Upon this branch of the case the court charged the jury as follows:

"Now, the claim of the defendant as to the fruit is that Mr. Brown simply gave the plaintiff his opinion that, if he shipped it to defendant, to be sold on plaintiff's account, he would realize more than the price named, by way of advice. That is the defendant's claim on that point. If defendant's contention on this point is sustained by the evidence, such an expression of opinion would not constitute a contract of guaranty, and plaintiff would only be entitled to the net proceeds of the sale as reported, which are not contradicted; that is, if they are contradicted in any way, it is for you to determine what the fact is. I say they are not contradicted, because I do not remember any evidence that goes to a contradiction of the correctness of the report of the sales made."

The third request was not a complete statement of what was claimed by the plaintiff. We do not think the court erred in refusing to give it. While we may think we should have reached a different conclusion from the one reached by the jury, the questions submitted to them were within their province, and were submitted with much care by the trial judge.

Judgment is affirmed.

The other Justices concurred.