F. M. SIBLEY LUMBER CO. v. SCHULTZ.

1. SALES—BREACH OF EXPRESS OR IMPLIED WARRANTY—PLYWOOD.
   A buyer of plywood who used it in making concrete forms was not entitled as a matter of law to recover damages for breach of an express or implied warranty of fitness of the material sold for his particular purpose where seller had never carried concrete form plywood in stock, never sold it, and informed defendant's superintendent that small shipment delivered pend-

ing arrival of carload was ordinary plywood; the material was so stamped, and the superintendent knew it was ordinary plywood before it was used and re-used a few days later.

2. SAME—BREACH OF EXPRESS OR IMPLIED WARRANTY—PLYWOOD—CONCRETE FORMS.

No recovery for breach of any express or implied warranty as to plywood furnished contractor for purchase and use in making concrete forms is allowed where record fails to show any such warranty, defendant had had experience with it on the job before placing six orders therefor with plaintiff seller and knew what to expect of it.

3. SAME—WARRANTY—CONTRACTS.

A guaranty or warranty is a matter of contract and must be a part of the contract itself on which the minds of the parties meet (2 Comp. Laws 1929, § 9451).

4. SAME—IMPLIED WARRANTY.

If a known, described or defined article is agreed upon and furnished, there is no implied warranty of fitness even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased since it is of the essence of an implied warranty that the contract be executory, that the particular article be not designated by the buyer, that only his need be known, that he does not undertake or is not able to determine what will best supply his need and therefore necessarily leaves the seller to make the determination and take the risk.

5. SAME—PLYWOOD—IMPLIED WARRANTY—QUESTION FOR JURY.

The question as to whether buyer of plywood to be used as a liner for panels in constructing concrete forms on State hospital dormitories relied on seller to furnish suitable material for the job, and hence whether or not there was an implied warranty of fitness of the plywood furnished, was for jury under evidence (2 Comp. Laws 1929, § 9454).

6. SAME—IMPLIED WARRANTY—INSTRUCTIONS—DEALERS—CONCRETE FORM PLYWOOD.

Failure to instruct jury that, in case it found buyer of plywood told seller that it was to be used for lining panels in constructing concrete forms on State hospital dormitories and that it appeared that buyer relied upon seller's judgment, then there was an implied warranty of fitness of the concrete form plywood furnished for such purpose, and that, if the material was inherently defective resulting in loss to buyer, the latter could recover from seller the amount of damages

actually sustained, notwithstanding fact that seller was not the manufacturer of the plywood, as a dealer impliedly warrants what he sells, constituted reversible error (2 Comp. Laws 1929, § 9454).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 7, 1941. (Docket No. 2, Calendar No. 41,194.) Decided April 8, 1941. Rehearing denied May 21, 1941.

Assumpsit by F. M. Sibley Lumber Company, a corporation, against Robert J. Schultz, doing business as Builders Specialty Company, for lumber material purchased. Defendant denied liability and claimed set-off and recoupment. Verdict and judgment for plaintiff. Defendant appeals and plaintiff cross-appeals. Reversed and new trial granted.

*Fildew & DeGree,* for plaintiff.

*Clifford M. Toohy,* for defendant.

SHARPE, C. J. This is an action in assumpsit for lumber material sold by plaintiff to defendant. Plaintiff claimed a balance due in the sum of $16,-089.37 and interest. Defendant denied liability and claimed set-off and recoupment for the sum of $24,194.32 plus interest at five per cent. from September 1, 1937. On May 26, 1939, the jury returned a verdict for plaintiff in the sum of $14,589 and a verdict of no cause for action on defendant's claim for set-off and recoupment. Judgment was entered in favor of plaintiff for the amount of the verdict.

Many facts in this case are disputed, but the following facts appear to be undisputed: In February, 1937, the State of Michigan let a general contract for the construction of four four-story buildings, known as dormitories, for the Ypsilanti State hospital to

the Permanent Construction Company. Albert Kahn, Inc., was the architect employed to make the plans and specifications for the buildings. The specifications supplied to the contractors provided:

"Where concrete is exposed in rooms, corridors, porches and so forth (not including storage rooms in basement, over-suspended ceilings and pent houses), line forms with specially treated plywood in as large sheets as possible; joints fitted close and thoroughly braced to prevent sag or bulge."

Early in March, 1937, defendant entered into a contract with the Permanent Construction Company to perform the form building work on the job for the sum of $70,000. Negotiations were entered into by defendant with plaintiff company for the furnishing of the required material and defendant ordered a carload, consisting of 65,000 feet, of concrete form plywood from plaintiff. The written purchase order for this material dated March 17, 1937, stated: "Delivery required—April 1, 1937." The product required was made in the State of Washington and it normally takes three or four weeks for delivery of a carload of material from the State of Washington to the city of Detroit. Delivery of the carload of material was not made until May 6, 1937. On or about April 5, 1937, the general contractor, Permanent Construction Company, demanded forms from defendant and he, not being able to get the carload of material from plaintiff when needed, had to get delivery of about 5,000 square feet of concrete form plywood immediately in order to get the walls up to meet the requirements of the general contractor. Plaintiff company furnished 5,000 feet of plywood on or about April 8, 1937, and charged for the same at the rate of $78 per thousand. This plywood was used on the job, but did not give satisfactory service.

Subsequently, the 65,000 feet of plywood from the car was delivered and used on the job, but it also did not give satisfactory service.

It is the claim of defendant that: He had been a customer of plaintiff company since 1920. On March 13, 1937, plaintiff's salesman Edge came to defendant's office and he and defendant's office manager examined a pamphlet distributed by the West Coast Plywood Company which reads as follows:

"Unique New Form Material.

"Few developments in building construction have so quickly commanded acceptance in every section of the country as the new specially-fabricated and treated Douglas fir plywood for concrete forms. Already, therefore, the following special advantages of this unique new material—which serves as lumber-and-lining combined—have been demonstrated on scores of buildings, bridges, viaducts and other structures requiring flawless surfaces.

"1. Highly water-resistant—can be used 7 to 10 times.

"2. Saves 40 per cent. to 75 per cent. carpentry labor.

"3. Speeds up stripping.

"4. Gives smooth, finless surfaces immediately.

"5. No costly rubbing or plastering necessary.

"6. Split-proof, non-bulging, ideal for reverse molds.

"7. Giant sizes reduce lineal footage of joints. (*Stock sizes up to 4 x 8 ft., larger sizes on special order.*)

"Although architects and contractors generally prefer the ⅝-in. thickness—which requires no lining—this special Douglas fir plywood is also available ¼-in. thick for lining and for curved forms.

"Besides all the other economies offered by this material, the ⅝-in. panels cost less than shiplap with a suitable lining.

"This new form material is made of thin sheets of selected old-growth Douglas fir, laminated with alternating grain direction for split-proof, warp-resistant strength. These sheets are bonded with a special glue that is highly water-resistant and far stronger than the wood fibers themselves. Finally each panel is sanded and thoroughly treated with a water-repelling agent developed especially for fir plywood.

"This double waterproofing protection gives these special panels stamina for 7 to 10 re-uses, after which they are still suitable for sheathing, sub-flooring, and other utility uses."

Upon this occasion, plaintiff's salesman Edge stated that this material, concrete form plywood, was standard material used for concrete form lining; that it was the same material specified by Kahn the architect; that it would give at least four re-uses and have some salvage value; that plaintiff company sold plywood every day and dealt in concrete form plywood; that plaintiff company could furnish the identical material described in the West Coast Plywood Company's pamphlet; and that it would take 10 to 15 days to get delivery. Defendant ordered one carload consisting of 65,000 feet of concrete form plywood from plaintiff company; and 5,000 square feet of material was ordered because of the delay in the delivery of the carload. When the plywood from the 5,000-feet lot was stripped from the walls, the edges had curled and in some cases the laminations had pulled apart and by breaking the edge, trimming off the portion that had curled, some of the 5,000-feet order was used a second time. The 65,000 feet of plywood was not suitable for concrete form work as the glue did not hold, the laminations came apart and the edges curled. The only use defendant was able to get out of the carload of ply-

wood was *one* when new and *one* more by going
to the extra trouble and expense of removing it from
the panels to which it had been nailed, sawing off
the edges which had curled and re-laying it by an
extra operation. Because of the unfitness of this
plywood, it became necessary to purchase 55,612
square feet of additional plywood; and the loss and
damage to defendant as a result of the purchase of
plywood from plaintiff company is as follows:

```
"Extra  labor  costs.................$21,360.82
 Extra social security tax...........    213.60
 Extra payroll insurance............  2,349.69
 Extra materials ...................  2,587.98
 Back charges, short lengths........    500.00
 Back charges, to remove fins, repair
    depressions in concrete..........  2,500.00
 Extra superintendent's pay.........    600.00
 Cost of checking and additional. time
    and expenses of Mr. Schultz and
    Mr. Lightfoot ...................  3,011.21
                                     _____
 TOTAL                               $33,123.30"
```

Of this amount defendant makes a credit of
$8,928.98 and claims a balance due him of $24,194.32.

It is the claim of plaintiff company that: As to
the 5,000 feet of plywood ordered and delivered, the
defendant's manager called him by telephone and
asked for specially treated plywood, but was in-
formed that specially treated plywood was not avail-
able in Detroit and had to be made up on special
order. Defendant's manager then requested that
ordinary plywood be sent out to the job; and the
material sent out was so stamped and defendant's
superintendent saw the material and knew that it
was ordinary plywood. There was no guarantee
that such material was anything other than ordi-
nary plywood.

As to the order for 65,000 feet of plywood, defendant obtained a pamphlet issued by the West Coast Plywood Company, a manufacturer of "specially treated plywood," descriptive of the product. Plaintiff's salesman denied discussing with defendant the merits of the plywood as shown in the pamphlet, denied making any statement as to the number of re-uses that specially treated plywood could be put to, and denied that he made any recommendations as to the quality of the material. Plaintiff's salesman did inform defendant that he would get the prices on the kind of material wanted, did get the prices, and gave the order for a carload as requested by defendant.

As to the six sales of plywood sold by plaintiff to defendant in addition to those above mentioned, the defendant ordered ordinary plywood or plywall, and received just what he ordered, and defendant knew or should have known that this plywood was for interior construction purposes where the same would not come in contact with moisture. Plaintiff claimed that the balance owing it at the time this lawsuit was tried was $17,429.61.

The subject matter of this lawsuit was submitted to a jury, and a judgment for plaintiff in the sum of $14,589 was entered on the verdict and judgment of no cause of action against defendant on his counterclaim.

Plaintiff appeals because it did not receive a judgment for the full amount of its claim. The defendant appeals from the denial of its motion for a new trial and denial of his motion to enter judgment in his favor notwithstanding the verdict.

Defendant urges that an implied warranty of fitness of the material sold for a particular purpose (concrete form liners) arose out of the circumstances of this case; and that the trial court failed

to instruct the jury properly on the law pertaining to the facts involved in this case.

It appears that at the conclusion of defendant's proofs on his claim of set-off and recoupment, plaintiff moved for a directed verdict of $17,429.61 against the defendant and for a judgment of no cause of action on defendant's claim of set-off and recoupment.

The record shows that the 5,000 square feet of ordinary plywood was used about May 20, 1937, and a few days later it was re-used. Some of the concrete form plywood from the car was used about May 26, 1937, and some used on June 19, 1937, and re-used about June 27th. On July 10, 1937, defendant notified plaintiff that it was not getting good results with this material. It also appears that plaintiff company never handled or sold concrete form plywood prior to the sale made in this case. In our opinion there was neither an express nor implied warranty as to the 5,000 square feet of ordinary plywood. Moreover, defendant's superintendent knew it was ordinary plywood before it was used. As to this item the jury should have been instructed that no damages could arise from its sale in this case.

As to the other six sales of plywood, the first order for which was placed beginning with July 25 or 26, 1937, the record fails to show that there was any express or implied warranty. Defendant had had experience with ordinary plywood on the job prior to these orders and knew what to expect from it. No recovery may be had for any extra expense growing out of the purchase and use of this plywood.

The principal question involved in this case relates to the 65,000 feet of specially treated plywood. It appears that defendant's manager secured a pamphlet issued by the West Coast Plywood Company, the manufacturer of the product, and asked plain-

tiff's salesman if he thought the material would be suitable for concrete form work. Defendant's manager testified as follows:

"We read the specification over and I asked Mr. Edge if it was his understanding of that specification that that material was the ideal material for concrete form work that we were doing; and he said it looked to him like that is what it was. * * *

"*A.* Well, I got an opinion, personal opinion of Mr. Edge that in his opinion it could be used as described in the pamphlet and we should have four uses out of it.

"*Q.* Mr. Edge told you that also, did he?

"*A.* That's right, in his opinion. * * *

"*Q.* All right, what was there in that conversation then that shows that Edge said this material could be used four or five times; if there is anything you haven't stated yet? Point out everything in your testimony where Edge told you this plywood could be used four or five times.

"*A.* In his opinion, he thought it would be suitable for four uses. * * *

"*Q.* Yes, I know it did, Mr. Edge didn't say it could be used four or five times, did he?

"*A.* He didn't say it couldn't be used.

"*Q.* I asked you if he said it could be used.

"*A.* He said in his opinion it could; the next day he called me on the telephone and told me what the price was, but he didn't say it couldn't."

In our opinion the salesman of plaintiff company did nothing more than express an opinion of the merits of the plywood.

Section 9451, 2 Comp. Laws 1929 (Stat. Ann. § 19.252), provides:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and

if the buyer purchases the goods relying thereon. No confirmation of the value of goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty.''

"A guaranty or warranty is a matter of contract, must be a part of the contract itself upon which the minds of the parties meet, and cannot exist without it.'' *Murphy* v. *Gifford,* 228 Mich. 287, 299.

See, also, *Switzer* v. *Pinconning Manfg. Co.,* 59 Mich. 488; *John D. Gruber Co.* v. *Smith,* 195 Mich. 336; *Clintsman* v. *Alfred J. Brown Seed Co.,* 127 Mich. 280; *Richey* v. *Daemicke,* 86 Mich. 647; *Linn* v. *Gunn,* 56 Mich. 447.

The next question is: May defendant recover upon an implied warranty?

It is urged by defendant that he relied upon plaintiff company to supply the carload of concrete form plywood to be used as a liner for panels in constructing concrete forms on the State hospital dormitories; that the only information defendant had as to the product ordered was what was contained in the pamphlet; that there were about 250,000 square feet of forms to be lined with concrete form plywood; and that estimating four re-uses of the plywood it would be necessary to order about 65,000 square feet of concrete form plywood.

The law of implied warranty is well stated in *Dunn Road Machinery Co.* v. *Charlevoix Abstract & Engineering Co.,* 247 Mich. 398 (64 A. L. R. 947), where we said:

"It is well stated by Mr. Mechem, as follows:
" 'The implied warranty of fitness is not to be extended to cases which lack the necessary conditions upon which it depends. The essence of the rule is, that the contract is executory; that the particular article is not designated by the buyer; that only his

need is known; that he does not undertake or is not able to determine what will best supply his need, and therefore necessarily leaves the seller to make the determination and take the risk; and if these elements are wanting, the rule does not apply. If, therefore, a known, described and defined article is agreed upon, and that known, described or defined article is furnished, there is no implied warranty of fitness even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased.' 2 Mechem, Sales, § 1349.''

In our opinion the following testimony of Arthur J. Lightfoot, office manager for defendant, is some evidence that defendant relied upon plaintiff company to furnish suitable material for the job:

''At the time we purchased the concrete form plywood through the Sibley Lumber Company, no brand was specified. We did not specify any manufacturer. We first asked the Sibley Lumber Company to supply us with the material described in the pamphlet, Exhibit 17; and Mr. Edge told me that it was a standard material, that any lumber company could furnish it, and that they could furnish that material which would be identical with what was described in the pamphlet, Exhibit 17.''

The value of this evidence was a matter for a jury to determine and this brings us to the question of whether proper instructions were given to the jury.

Defendant urges that it was prejudicial error upon the part of the trial court to refuse to give the following instruction:

''I charge you, that if you find that the defendant and cross plaintiff, Robert J. Schultz, doing business as Builders Specialty Company, made known to the plaintiff and cross defendant the purpose or purposes for which the Builders Specialty Company

desired the concrete form plywood here concerned, and it appeared that the buyer relied on the seller's judgment, then there is an implied warranty of fitness of the concrete form plywood furnished for such purpose and if this material is inherently defective, resulting in loss to the purchaser, the defendant and cross plaintiff has a right to recover from plaintiff and cross defendant, the amount of damages actually sustained by him, caused thereby.

"It has been frankly admitted here by Ernest Edge that he knew the purpose for which this plywood was to be used and I charge you that the knowledge so obtained by the salesman, Ernest Edge, is imputed to his principal, F. M. Sibley Lumber Company, and they are chargeable with that knowledge just as though it had been given to anyone of the officers of the company.

"In this connection, the fact that the plaintiff and cross defendant, F. M. Sibley Lumber Company, was not the manufacturer of the plywood, would in no way relieve the company, as under the Michigan law, the dealer impliedly warrants what he sells, the same as the manufacturer, where, as previously stated, the purpose for which the buyer purchased the goods has been made known to the seller and it appears that the buyer relied on the seller's judgment. (2 Comp. Laws 1929, § 9454, subsection (1) [Stat. Ann. § 19.255])."

We have examined the record and fail to find that the trial court gave any instruction upon the subject matter of the above request. In our opinion, it was error to fail to instruct the jury upon the subject matter contained in the first and third paragraphs of the above request.

Section 9454, 2 Comp. Laws 1929, provides:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it ap-

pears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

Defendant was entitled to have the substance of the above act given to the jury. For failure to do so the judgment is reversed and a new trial granted. Defendant may recover costs.

BUSHNELL, BOYLES, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.