438 F.2d 803
 SKIBS A/S GYLFE, as Successor in interest to Tankrederiet Gefion A/S as Owner of the Motorship Fyda, et al., Plaintiffs,
v.
HYMAN-MICHAELS COMPANY and Lakes Shipping and Trading Company, Defendants and Third-Party Plaintiffs-Appellants,
v.
NATIONAL CARGO BUREAU, INC., Third-Party Defendant-Appellee.
SKIBS A/S GYLFE, and Forsikrings-Askjelskapet Vega, Plaintiffs-Appellants,
v.
NATIONAL CARGO BUREAU, INC., and G. P. Sullivan, Defendants-Appellees.
SKIBS A/S GYLFE et al., Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
The TOKYO MARINE & FIRE INSURANCE COMPANY et al., Plaintiffs,
v.
HYMAN-MICHAELS COMPANY, Defendant and Third-Party Plaintiff-Appellant,
v.
NATIONAL CARGO BUREAU, INC., Third-Party Defendant-Appellee.
 Nos. 20126-20129.
 United States Court of Appeals, Sixth Circuit.
 February 5, 1971.
 
 MacDonald Deming, New York City, for Skibs A/S Gylfe, and others; Haight, Gardner, Poor & Havens, New York City, Foster, Meadows & Ballard, Raymond A. Ballard, Detroit, Mich., on brief.
 Thomas E. Byrne, Jr., Philadelphia, Pa., for Hyman-Michaels Co., and others; Lucking & Miller, Donald J. Miller, Detroit, Mich., Krusen, Evans & Byrne, Philadelphia, Pa., on brief.
 David V. Martin, Detroit, Mich., for National Cargo Bureau, Inc., and others; Martin, Bohall, Joselyn, Halsey & Rowe, David V. Martin, Detroit, Mich., on brief.
 William E. Gwatkin, III, Atty., Dept. of Justice, Washington, D. C., for the United States; William D. Ruckelshaus, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief.
 Before PHILLIPS, Chief Judge, and PECK and BROOKS, Circuit Judges.
 BROOKS, Circuit Judge.
 
 
 1
 In July, 1961, the Norwegian vessel Gyda and its cargo of steel turnings (finely shredded scraps of steel) were damaged as a result of the spontaneous combustion of the cargo. Eleven lawsuits, several with crossclaims and third-party defendant claims, were instituted to recover for the damage. Ten of these lawsuits were filed by the owners of the ship and its underwriters, and one action was brought by the owner of the cargo and its underwriters. Four of the lawsuits were dismissed prior to trial, and the remaining seven actions were consolidated for trial. Of the remaining seven actions, six were non-jury admiralty cases brought by the shipowners; one was a civil jury action brought by the owners and underwriters of the cargo. During trial, several additional actions were dismissed and certain claims settled.
 
 
 2
 In this consolidated appeal, four of the actions' final judgments are presented for review. For purposes of clarity, the facts and nature of each action and the issues raised by the respective appeals will be treated separately. An overall picture of the circumstances surrounding this protracted litigation and the District Court's disposition of the non-jury cases can be found in Skibs A/S Gylfe, et al. v. Hyman-Michaels Company v. National Cargo Bureau, Inc. (third-party defendant), D.C., 304 F. Supp. 1204 (1969).
 
 
 3
 No. 20,127
Skibs A/S Gylfe and Forsikrings-Askjelskapet
 Vega
 v.
National Cargo Bureau, Inc. and G. P.
 Sullivan
 
 
 4
 This breach of contract action is one of the non-jury admiralty cases brought by the shipowners, Skibs A/S Gylfe, as successor in interest to the original owners of the A/S Gyda, and the hull underwriters of the Gyda, Forsikrings-Askjelskapet Vega, against National Cargo Company. National Cargo was engaged by the shipper of the steel turnings, Hyman-Michaels Company, to perform services relating to the shipping of the steel turnings. National Cargo impleaded Hyman-Michaels as a third-party defendant to this action. However, as National Cargo has been exonerated from liability by the District Court's judgment, the third-party claim was dismissed below and has not been pressed on this appeal. The shipowners' contract action against National Cargo is a third-party beneficiary claim based upon National Cargo's contract with the shippers of the steel turnings to oversee the loading of the cargo, make periodic tests of the temperature of the stowage and advise as to its safe character. It is alleged that National Cargo breached its contractual warranty of workmanlike service by not properly supervising the loading of the cargo, by not continuing to make tests of the temperature of the stowage and by not informing the shipowners of the overheating of the stowage. Damages for the injury to the ship and its cargo are sought from National Cargo for its breach of contract.
 
 
 5
 The District Court made certain findings of fact and conclusions of law and concluded:
 
 
 6
 1. National Cargo warranted to perform its contractual obligations to the shippers of the steel turnings in a workmanlike fashion, and that the shipowners received the benefit of this warranty as a third-party beneficiary, see Ryan Stevedoring Company v. Pan-Atlantic S. S. Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).
 
 
 7
 2. National Cargo breached this warranty in a number of material respects, but that
 
 
 8
 3. National Cargo's breach of warranty did not make them liable for the damages to the ship and its cargo because the shipmaster's applying water to the spontaneously overheating cargo "constituted an intervening cause and broke the previously existing chain of causation."[1]
 
 
 9
 The shipowners contend that the District Court erred in holding that National Cargo's contractual obligations with respect to the steel turnings was only to supervise and offer expert opinion as to the safe character of the cargo at the point of loading in Muskegon, Michigan. It is argued that National Cargo was under a continuing obligation to advise as to the safe character of the cargo and it breached this responsibility by not advising the shipowner of the dangerous overheating of the cargo in hold No. 3 when the ship docked in Detroit. The District Judge reviewed all the documents which comprised the contract between National Cargo and the shippers of the cargo. In addition, he examined the pertinent testimony to determine the parties' intent in entering into the contract. The Court's conclusion that National Cargo's contractual obligations were restricted to supervising loading at Muskegon and giving advice as to the safe character of the cargo only at the point of loading is supported by the record and is not clearly erroneous. Federal Rules of Civil Procedure, Sec. 52(a).
 
 
 10
 The shipowners also challenge the District Court's conclusion that while National Cargo breached its warranty of workmanlike service, the "causal link" between this breach and the ultimate damage to the ship and its cargo was cut by the shipmaster's negligence.[2] Specifically, the Court held that the shipmaster acted negligently in applying water to the overheating turnings in hold No. 3; in sailing from Montreal knowing of the extremely dangerous overheating of the cargo in hold No. 3; and by applying additional water to the cargo after sailing from Montreal. It was in part this conduct of the shipmaster and the lapse of time and space between the loading of the ship and the fire which damaged it that the Court found broke the "causal chain" between National Cargo's breach of warranty and the damage to the ship and cargo. These findings of fact are binding unless it can be said that they are clearly erroneous, Processteel, Inc. v. Mosley Machinery Company, Inc., 421 F.2d 1074 (6th Cir. 1970) (Decided February 5, 1970), and while the legal conclusion that a "causal chain" was broken is theoretically incorrect, the findings of fact can only support a conclusion that the damages to ship and cargo were unforeseen as viewed from the point when National Cargo breached its contract.
 
 
 11
 No. 20,128
 Skibs A/S Gylfe, et al.
 v.
 United States of America
 
 
 12
 This non-jury admiralty negligence action was brought by the shipowners against the United States, claiming that the Coast Guard had voluntarily assumed a duty of due care by detaining the ship at Detroit because of the overheating of the cargo and then negligently breached this duty by permitting the ship to leave port while the temperatures of cargo were in excess of safe limits prescribed by the Dangerous Cargo Act (46 U.S.C. § 170), and the regulations promulgated pursuant to that statute. The District Court found that the regulations relied upon (33 C.F.R. § 6.04-8, 6.12-1 and 6.14-1) did not require the Coast Guard to detain a ship with overheated steel turnings, but that 46 U.S.C. § 170(12) [46 C.F.R. § 146.02-6] did place the primary duty of enforcement of the Dangerous Cargo Act upon the Coast Guard and gave it authority to detain ships to ascertain if an infraction of the Dangerous Cargo Act had occurred. However, it was concluded that the Coast Guard did not act negligently in permitting the ship to leave Detroit.
 
 
 13
 The District Court's decision that the Coast Guard did not act negligently in releasing the ship at Detroit is challenged by the shipowners. Here again we are asked to overturn a conclusion of law of the District Court based upon its findings of fact because they are clearly erroneous. The District Court carefully examined technical evidence respecting the safe range of temperatures of steel turnings while in stowage aboard a ship. Testimony of the Coast Guard officer in charge at the Port of Detroit was heard as was testimony given by the master of the ship which was damaged. Having received and considered all the evidence bearing on the issue of whether the Coast Guard was negligent in permitting the ship in question to leave port, the Court concluded that there was no negligence in not further detaining it. The findings of fact and conclusions of law based thereupon are amply supported by evidence in the record and cannot be labeled as "clearly erroneous".
 
 
 14
 No. 20,126
 Skibs A/S Gylfe
 v.
Hyman-Michaels Company and Lakes
 Shipping and Trading Company
 v.
 National Cargo Bureau, Inc.
 
 
 15
 This was a non-jury civil action brought by the shipowners against Hyman-Michaels, the shipper of the steel turnings. Hyman-Michaels implead National Cargo claiming that National Cargo's breaching of its contract would make it liable to them if they, as the shipper of the steel turnings, were found liable to the shipowners. During the trial, Hyman-Michaels settled with the shipowners (several other actions were then dismissed) and the only dispute remaining was that between the shipper of the cargo, Hyman-Michaels, and National Cargo, for breach of its loading contract. This action retained the characteristics of the third-party defendant claim of attempting to transfer liability. The District Court held for National Cargo and Hyman-Michaels appeals. Three issues are raised by the appeal from this decision.
 
 
 16
 First, it is argued that for Hyman-Michaels to recover from National Cargo on its third-party claim, it is not necessary that it prove that it was actually liable to the shipowners for the damage to the ship. This question has already been presented to this Court by an interlocutory appeal and was resolved adversely to Hyman-Michaels' contentions. See, Tankrederiet Gefion A/S v. Hyman-Michaels Company, 406 F.2d 1039 (6th Cir. 1969). That issue was properly resolved by the interlocutory appeal, and it requires no further discussion. (This same question is raised in appeal No. 20,129, The Tokyo Marine & Fire Insurance Company, et al. v. Hyman-Michaels v. National Cargo Bureau, Inc. [Third-Party Defendant] infra, but will not be given further consideration.)
 
 
 17
 The second issue raised is that the District Court erred in its determination that National Cargo's contract with Hyman-Michaels pertained only to supervising loading and giving expert opinion as to the character of the cargo at Muskegon, Michigan. Hyman-Michaels contends, as did the shipowners in appeal No. 20,127, that National Cargo had a duty to give an opinion as to the safe character of cargo when the ship docked in Detroit. The argument Hyman-Michaels now advances is somewhat different than that advanced by the shipowners. However, we hold that the District Court's ruling on the scope of National Cargo's undertaking finds support in the record and is not clearly erroneous.
 
 
 18
 Last, Hyman-Michaels argues that the District Court erred in applying tort principles of "superseding cause" to this contract action. The issue is phrased in their appellate brief as:
 
 
 19
 "Under the circumstances and evidence in this case, was the action of the Captain in applying water to the turnings following the sailing of the ship from Montreal on or about July 3 an independent intervening cause?"
 
 
 20
 The inappropriate use of tort-negligence language in the various contract actions has already been briefly discussed. See note 1, supra. It is worthy to note that while the complaint is lodged against the District Court's use of the negligence language "superseding cause" Hyman-Michaels has formulated its objection by using a negligence phrase, i. e., "independent intervening cause". Both parties have cited contract cases in which expressions of causation traditionally appearing in negligance actions have been used. Yet, it is elementary that in contract theory a party who breaches a contract has its ultimate damage liability for that breach gauged by the test of foreseeability of the injury resulting therefrom. Restatement of Contracts § 330. In determining foreseeability questions of "remoteness in time and space and the number of intervening events" are considered to decide whether a breaching party to a contract had reason to foresee the injury. The fact that someone or something else in fact "caused" the injury may or may not in varying situations affect the liability of the breaching party if the party had or should have had reason to foresee that the injury would result, but in the present case clearly the supplying of water by the captain to his cargo was not a reasonably foreseeable circumstance.
 
 
 21
 The point is well taken that certain inappropriate language was used by the District Court in its opinion. However, all parties actively, although perhaps unconsciously, contributed to the error and the findings of fact made by the District Court are not clearly erroneous and support the conclusion (phrased in contract terms) that National Cargo is not liable in money damages for its breach of contract because the injury to the ship and its cargo was unforeseeable.
 
 
 22
 No. 20,129
The Tokyo Marine & Fire Insurance
 Company, et al.
 v.
 Hyman-Michaels Company
 v.
 National Cargo Bureau, Inc.
 
 
 23
 This civil jury breach of contract action was brought by the purchaser of the cargo, Mitsubishi Shoji Kaisha, Ltd., and the Japanese insurer of the cargo against the shipper of the cargo, Hyman-Michael and Michigan Foundry Supply Company which originally sold the steel turnings to Hyman-Michaels. Hyman-Michaels and Michigan Foundry Supply Company implead National Cargo. During the trial Hyman-Michaels and Michigan Foundry Supply settled with the Japanese purchaser of the cargo and the question of National Cargo's liability to the third-party plaintiffs (original defendants) was resolved by the jury in National Cargo's favor. Only Hyman-Michaels appeals from the jury verdict. One issue is assigned as error.
 
 
 24
 Hyman-Michaels maintains that it was error for the District Court to have instructed the jury that the purchase contract entered into between Mitsubishi and Hyman-Michaels contained an implied warranty that the steel turnings at the time of shipment were reasonably fit for transportation. When this purchase contract was entered into the Uniform Sales Act was in effect in Michigan, and Hyman-Michaels argues that Section 15 of that Act M.C.L.A. § 440.2315 prohibits implying warranties when a buyer orders definite, clearly described or specific goods. A reading of Section 15 of the Uniform Sales Act and the Michigan cases cited by Hyman-Michaels, see, e. g., F. M. Sibley Lumber Company v. Schultz, 297 Mich. 206, 297 N.W. 243 (1941); Beaman v. Testori, 323 Mich. 194, 35 N.W.2d 155 (1948), indicates that the rule relied upon prohibits implying a warranty of fitness for a purpose when a buyer orders definite or specific goods. However, in this case, we are dealing with an implied warranty that the goods at the time of shipment were reasonably fit for transportation. Michigan cases tend to indicate that a warranty of fitness for a purpose is not as broad in scope to encompass a warranty that goods are fit for shipment. See, Richardson v. Messina, 361 Mich. 364, 105 N.W.2d 153 (1960); Wade v. Chariot Trailer Company, 331 Mich. 576, 50 N.W.2d 162 (1951). In addition, while no Michigan cases can be found that deal with the question, it appears that a warranty of fitness for shipment is a separate and distinct warranty from that of fitness for a purpose and is properly implied in contracts such as the one in question in the present case. See, Harp, Hardee & Co. v. Hass-Phillips Produce Company, 205 Ala. 573, 88 So. 740 (1921); Metal Furniture Company v. Goss, 158 Ark. 145, 249 S.W. 550 (1923). Therefore, it is concluded that the District Court's instruction that the contract between Mitsubishi and Hyman-Michaels gave rise to a warranty that at the time of shipment the goods were reasonably fit for transportation was proper.
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The District Court here and at other points in its opinion erroneously interchanged language used in contract law with terms used in tort-negligence law. (See e. g. Skibs A/S Gylfe v. Hyman-Michaels Company, 304 F.Supp. 1204, 1221 (1969). "[T]his court has found that NCB's breach of its contractual undertakings was not a proximate cause of the damage suffered by the ship * * *.") The irony of the situation is that the District Court clearly recognized and correctly ruled that the shipowners had no cause of action against National Cargo based on a negligence theory, 304 F.Supp. 1204, 1222. However, even after recognizing this fact, the Court continued to use negligence terminology such as "proximate cause," "intervening cause" and "superseding cause" in reaching its decision that National Cargo was not liable under its loading contract for the damage to the ship. Part of this confusion understandably resulted from the complexity of this protracted litigation which involved actions based on contract and tort theories. In addition, some states for public policy reasons permit injured third parties to recover for "breach of implied warranties" on negligence theory to circumvent the requirements of contractual privity. However, in these types of stevedoring cases the courts treat the breach of implied warranty of workmanlike service between the actual parties as strictly contractual and permit injured shipowners to proceed under contract theory as third-party beneficiaries. See Ryan Stevedoring Company v. Pan-Atlantic S.S. Corporation,supra. It must be added that the parties themselves contributed to the error by incorrectly interchanging terminology in their pleadings and at trial. Under ordinary circumstances this mistake might rise to the level of reversible error since contract principles correctly applied impose different standards of proof than negligence principles. However, in this case, the District Court's findings of fact also support the conclusion that National Cargo's breach of contract did not make them liable because remoteness in space and time and the number of intervening events made the damage to the ship unforeseeable.
 
 
 [2]
 For the purpose of deciding in this contract action that National Cargo was not liable for the unforeseen damage to the ship, it was unnecessary for the Court to have concluded that the shipmaster's applying water to the overheating cargo was a negligent act